## Home Insurance Company v. Henderson Lodge No. 732 Loyal Order of Moose.

(Decided December 21, 1923.)

### Appeal from Henderson Circuit Court.

1. Master and Servant—Test for Determining Whether One is "Independent Contractor."—In determining whether one is independent contractor, it is not the right of interference by the owner which renders employe a servant, but only the right to interfere with the means to be employed and not as to the result of the work.

2. Master and Servant—One Conducting Automobile Contest Held Independent Contractor.—One employed under a contract to take charge of and direct an automobile contest held an independent contractor, although the contract provided for the appointment of a committee "to assist party of the first part, with power to sign contracts and any other papers," and that no member whatsoever,

except the committee appointed, had right to inspect books or in any way interfere with the management or direction of the contest.

BRUCE, BULLITT & GORDON, F. M. DRAKE and J. L. DORSEY, JR., for appellant.

F. J. PENTECOST for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellant insured appellee's automobile against theft, etc., "excepting by any person or persons . . . in the assured's service or employment." The automobile was stolen by one Louis Rubenstein, and the only question presented by this appeal is whether or not Rubenstein was in the assured's service or employment.

It is agreed by counsel that this question turns upon whether or not Rubenstein, under his written contract to conduct an automobile contest for the assured, was an independent contractor. The contract reads as follows:

"Contract, made and entered into this 7 day of Oct., 1920, by and between Louis Rubenstein here and after known as the party of the first part and the Moose Lodge of Henderson, Kentucky, hereinafter known as the party of the second part.

"Party of the first part is to manage and give his time to contest known as auto contest and to have complete charge of managing and directing. Party of the second part has appointed three members of said lodge to assist party of the first part with power to sign contract and any other papers so-forth in behalf to be signed for said contract.

"Party of the first part agrees to pay party of the second part sixty-six and two-thirds per cent (66 2/3) of the net profits and keep thirty-three and a third per cent (33 1/3 per cent) for himself. It is further agreed by both parties that there will be no members whatsoever except committee appointed will have any right to inspect books or in any way to interfere with the management or directing of contest.

"It is further agreed by the party of the first part to turn in all money received by him daily to person named by party of the second part, taking receipt for same. It is further agreed that the party of the first shall not make any debts without consent of party of the second part.

"It is understood that there is no verbal understanding whatever changing or modifying this contract, any amendments must be in writing.

"This contract signed in duplicate on the day and year first above written by both parties hereto."

In support of the contention that Rubenstein was not an independent contractor, appellant relies chiefly upon Williams v. N. C. R. Co., 157 Ky. 836, 164 S. W. 112. It is confidently asserted that this case forecloses the question and necessitates a ruling that Rubenstein was not an independent contractor. In the course of that opinion, we quoted with approval a definition of an independent contractor from 26 Cyc. 1546, in which it is stated:

"The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere that makes the difference between an independent contractor and a servant or agent."

We did not, however, adopt this as the only infallible test, as counsel assume and assert, for the determination of whether or not an employe is an independent contractor or a servant. This excerpt is not the whole of our quotation nor of the test as therein stated, neither is it by itself a correct statement of the rule, since it is not the right of interference by the owner which renders the employe a servant, but only the right to interfere with the means to be employed, and not as to the result of the work. This is clearly stated in that part of our quotation from Cyc. in the Williams case to which appellant does not refer, and which reads:

"To enlarge, the test is whether the employe represents his employer as to the result of the work only, or as to the means as well as to the result. If the employe is merely subject to the control or direction of the owner or his agent as to the result to be obtained, he is an independent contractor; if the employee is subject to the control of the employer as to the means, he is not an independent contractor."

It then does not follow that because the contract provides "no member whatsoever, except committee appointed, will have any right to inspect books or in any way interfere with the management or direction of the contest," that Rubenstein was not an independent contractor, as is the contention, even if it be conceded that this provision necessarily implies a right upon the part of the committee to interfere with the management or direc-

tion of the contest, unless that right of interference refers to the means to be employed rather than result to be obtained.

The contract expressly provides that Rubenstein is to have complete charge of managing and directing the contest, and then provides for the appointment of the committee referred to above "to assist party of the first part, with power to sign contracts and any other papers, soforth, in behalf of said contract."

Reading these several provisions together, we think it is reasonably clear that Rubenstein was given complete charge of the contest and that the committee was appointed simply to assist him, and with power only to sign any contract or other papers for the lodge that might be required, and to inspect Rubenstein's books.

This certainly did not give the committee the right to interfere in any way with the means adopted by Rubenstein in managing and conducting the contest, but gave the committee only such rights as were deemed necessary for the accomplishment of the desired end. Nor do the provisions of the contract that Rubenstein must "give his time to the contest, turn in all money received by him daily, and not make any debts without the consent of the party of the second part" manifest a right upon the part of the owner or its committee to interfere with the means to be employed by Rubenstein in accomplishing the desired end. And we are clearly of the opinion, under the test approved in the Williams case, which is reaffirmed, that Rubenstein was an independent contractor and not in the assured's "service or employment" as those terms are employed in the policy of insurance.

There is no resemblance whatever between the contract here and the one involved in the Williams case when considered as a whole, as they must be to correctly understand their parts. Rubenstein was employed simply to conduct a contest in his own way, and without directions from appellee as to any of the means to be employed. In the Williams case, Alexander was employed by the National Cash Register Company as its local agent to transact its business from day to day, as it might direct. The fact that in that contract Alexander was to devote all of his time to his employer's service was referred to in connection with the other provisions of his contract as an evidence that the relationship of master and servant existed, as was also the fact that Alexander was

paid for his services on a commission basis, but the contracts and the services in the two cases are so essentially different that we think it is clear, despite some similar provisions in the contracts, that Alexander was a servant but that Rubenstein was an independent contractor.

Much stress is also laid upon the provision in the contract that Rubenstein was not to make any debts without the consent of the owner. Conceding that such a provision in the contract ordinarily implies a recognition of agency, we think such an implication is refuted here by the contract as a whole, and that it was inserted in the contract, obviously drawn by an unskilled person, simply to make it clear beyond dispute that Rubenstein was not an agent or employee of the insured with power to render it responsible for any indebtedness he might create in conducting the contest.

The case of Williams v. N. C. R. Co., *supra,* is but one of many from this court dealing with the question of whether an employe was an independent contractor or a servant. Various tests have been applied in the different cases. In Employers' Indemnity Co. of Philadelphia v. Kelly Coal Co., 149 Ky. 712, 149 S. W. 992, the following statement from Wood on Master and Servant, 317, was quoted with approval:

"The real test by which to determine whether a person is acting as a servant of another is to ascertain whether, at the time when the injury was inflicted, he was subject to such person's orders and control and was liable to be discharged by him for disobedience of orders or misconduct."

It was said in the same case, "that the real test is whether or not a person employed is acting for or in the place of his employer and in his absence in accordance with and respecting the latter's will, and not his own."

In Carter Coal Co. v. Howard, 169 Ky. 87, 183 S. W. 244, the question of whether one Penland was an independent contractor of the coal company, and the court said:

"If, under the contract between the coal company and Penland, the coal company had no control nor direction over the work except to see that it was done properly and according to contract, and Penland used his own judgment and methods in the execution of the work, then Penland was an independent contractor; on the other hand, if, under the contract, the coal company had the right to

control and direct the details of the work and the manner in which it should be done, and Penland, in carrying out the contract, was at all times subject to its orders, he was not an independent contractor.''

In McCoy v. Griffith, 196 Ky 406, 244 S. W. 871, the following was quoted with approval, from 18 R. C. L. 490·

''The essential elements are that the master shall have control and direction, not only of the employment to which the contract relates, but of all of its details, and shall have the right to employ at will and for proper cause discharge those who serve him. If these elements are wanting, the relation (of master and servant) does not exist.''

There is no trouble, however, with the law, or any essential difference in these variant statements of the test to determine the relationship existing, which are variant simply because of an effort to state the rule for a test in terms applicable to the particular case. Under any of these differently expressed tests, we think Rubenstein was an independent contractor.

Several minor contentions are briefly argued by counsel for appellant, which we do not regard as tenable or of sufficient importance to discuss.

Judgment affirmed.