## Conley v. Momarc Utilities Co.

May 21, 1948.

Williams & Allen for appellant.

J. W. Howard for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

Appellant, Luther Conley, brought this action to recover for damages to his building and contents alleged to have been caused by an explosion of natural gas.

Appellee, Momarc Utilities Company, supplied gas

to its consumers in Salyersville. Appellant charged that appellee through its servants, agents and employees did so grossly, negligently, and carelessly manage and operate its natural gas flow and equipment as to cause the same to explode thereby damaging his building and the contents. He claimed damages in the total amount of $5,000.

The cause proceeded to trial and at the conclusion of the evidence for plaintiff, the court, on motion of defendant gave a peremptory instruction in favor of the defendant. Judgment was entered dismissing plaintiff's petition. Plaintiff appeals.

The sole ground urged for reversal is that the court erred in giving the peremptory instruction. Consequently, the only question here is whether or not there was sufficient evidence to authorize the submission of the case to the jury.

The record discloses that in January 1947, appellant had completed an addition to a garage over which he had built an upstairs apartment in which plaintiff and his wife were living at the time of the explosion on February 27, 1947. The original garage was plumbed for gas when built and the meter was placed on the outside of the building near the ground and on the opposite side of the garage from where the new addition was located. The plaintiff placed the plumbing for extension of gas in the new addition to the building. This was done without any notice to the defendant company. It was connected with the gas line in the old garage. The defendant company had nothing whatsoever to do with the connection or with the plumbing in the building.

The evidence shows that the gas pressure was not constant and that there was little or no pressure at times. Plaintiff testified that on numerous occasions he and his wife would leave the house with the gas burning and upon their return the gas would be out. This explosion happened in the month of February and the testimony shows it was a very cold month.

Numerous witnesses testified as to the lack of constant flow of gas in the community. Apparently this irregularity in the gas pressure was common knowledge.

Numerous witnesses also testified about leakage in

the gas line outside and away from the building of appellant. Appellant testified that he called to the attention of Mr. Moore, the owner and manager of the Utilities Company, this irregular gas pressure and also the leaks in the line.

Those who are acquainted with the flow of natural gas in utility lines are quite conversant with the irregularity of the pressure at times, especially in extremely cold weather. Consumers with this knowledge take every precaution to see that the valves are closed when the stoves are not in use.

Appellant insists that the evidence shows gross negligence on the part of appellee in that it permitted leaks at different places in the line thereby affecting the gas pressure, and in its failure so to control its service and properly maintain its service lines, as to effectuate a constant flow of gas through the lines. It is urged that the negligence was the proximate cause of the explosion. In support of his position he cites Ashland Coal, Iron & R. Co. v. Wallace, 101 Ky. 626, 42 S. W. 744, 43 S. W. 207; Taylor-Green Gas Company v. Stearman, 262 Ky. 61, 89 S. W. 2d 305; and Taylor-Green Gas Company v. Newcomb, 302 Ky. 564, 195 S. W. 2d 307. It will be noted that these cases are not in point. The first above involved an injury received in a coal mine. There was conflicting evidence on the question of negligence. The Taylor-Green cases are clearly distinguishable in that in those cases the company had changed the meter in one and had installed the meter in the other. There was evidence of negligence in these acts. That is not the situation in this case. The negligence that caused this explosion, if any, was the manner and means of escape of the gas into the kitchen of appellant. The knowledge of how this may have happened seems to have been peculiarly and only in the mind of the plaintiff. It appears that on the night preceding the explosion plaintiff and his wife had been out for dinner and returned about 9:30 in the evening and went directly to bed. On the following morning Mrs. Conley, appellant's wife, arose earlier than Mr. Conley and went directly into the kitchen. He says that she had been there only about a minute when the explosion occurred. He does not know whether she struck a match or what she did, and all he knows is that soon after she

entered the kitchen the explosion occurred. He testified as follows:

"Q. 46. Do you know whether or not the gas was on in your stove that night, when you returned from Salyersville? A. No, I don't.

"Q. 47. Do you know whether or not the jets were closed on the stove where you turn on and off gas? A. I was not in there.

"Q. 48. Do you have any information about it as to your personal knowledge? A. As to myself, I don't.

"Q. 49. If there was an accumulation of gas in the apartment, can you say now where the gas came from? A. It came from the cook stove.

"Q. 50. Do you know whether or not the connections with the cook stove, were leaking? A. No sir, they were not leaking.

"Q. 51. If it came from the gas cook stove, and no leaks there it would turn out the valve was open? A. Yes sir, it must have been."

Certainly the defendant company had nothing to do with connecting the stove or with the operation of the stove. It could not be charged with leaving the valve open. There is nothing in this record of probative value to show the defendant's negligence to be the moving cause of this explosion.

Appellant in his brief states:

"* * * Under such circumstances and conditions, continuously existing over a period of a month or more, it might reasonably be expected that some one would neglect or fail, after the flow of gas had stopped, to turn a valve to prevent its return to a stove or heater.

"And that is what happened in this particular case as the evidence fairly shows. There can hardly be any doubt that the explosion was caused by an accumulation of gas in the kitchen; the appellant states positively that such was a fact, and the only reasonable inference from the evidence is that this accumulation of gas was caused by an open or partly open valve on the stove."

Thus, it will be seen that the accumulation of gas

admittedly was caused by an open or partly open valve on the stove. This was the negligence of appellant and but for which the explosion would not have occurred. See Neal v. Ashland-Ironton Transfer & Ferry Co., 201 Ky. 332, 256 S. W. 721; and Price v. T. P. Taylor & Co., 302 Ky. 736, 196 S. W. 2d 312.

The court properly and correctly gave the peremptory instruction to find for the defendant.

Wherefore, the judgment is affirmed.